1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TINA PATEL,                              No.  2:14-cv-0031 KJN

12                  Plaintiff,

13          v.                                ORDER

14   NAVINBHAI PATEL, et al.,

15

16                  Defendants.

17   <u>INTRODUCTION</u>

18          This case asserting various federal and state law causes of action primarily for alleged

19   wage/hour violations was initially filed in the Solano County Superior Court by plaintiff Tina

20   Patel.  However, on January 6, 2014, after answering plaintiff's complaint, defendants Navinbhai

21   Patel and Nayanabala Patel removed the action to federal court on the basis of federal question

22   jurisdiction.  (ECF No. 1.)[1]  The court entered a pretrial scheduling order on July 25, 2014, setting

23   a jury trial for July 13, 2015, and requiring law and motion to be completed by April 9, 2015.

24   (ECF No. 23.)

25   ////

26   _____

27   [1] After all parties consented to the jurisdiction of a United States Magistrate Judge for all
     purposes pursuant to 28 U.S.C. § 636(c) (ECF Nos. 3, 4), the action was reassigned to the
     undersigned for all further proceedings and entry of final judgment.  (ECF No. 5.)

28

1    Subsequently, on September 8, 2014, defendants filed a motion for summary judgment.
2    (ECF No. 24.)  Plaintiff filed an opposition to the motion, and defendants filed a reply brief.
3    (ECF Nos. 32, 39.)  On the court's own motion and pursuant to Local Rule 230(g), the motion
4    was then submitted without oral argument on the record and written briefing.  (ECF No. 41.)
5    After carefully considering the parties' written briefing, the court's record, and the
6    applicable law, the court GRANTS IN PART the motion for summary judgment as to plaintiff's
7    federal claims and REMANDS plaintiff's remaining California law claims to state court.
8    BACKGROUND[2]
9    The background facts and evidence[3] are largely undisputed.  To the extent that any
10   material factual dispute exists, the court resolves the dispute in plaintiff's favor for the limited
11   purpose of adjudicating this motion for summary judgment only.
12   Defendants are the parents of Aman Patel.  (Declaration of Navinbhai Patel, ECF No. 27
13   ["Navinbhai Decl."] ¶ 10; Declaration of Nayanabala Patel, ECF No. 28 ["Nayanabala Decl."] ¶
14   10; Declaration of Aman Patel, ECF No. 29 ["Aman Decl."] ¶ 1.)  Plaintiff, defendants, and
15   Aman are of Indian descent.  (Declaration of Tina Patel, ECF No. 32-8 ["Tina Decl."] ¶ 9.)  Both
16   plaintiff's parents and defendants immigrated to the United States from the State of Gujarat in
17   India, and are of the same caste.  (Id.; see also Deposition of Navinbhai Patel, ECF No. 32-2
18   ["Navinbhai Dep."] 44:7-19.)  Plaintiff was raised "in a Gujarati household" and speaks Gujarati
19   as her second language.  (Tina Decl. ¶ 2.)  It was important to defendants that Aman marry
20   someone from the same caste and region of India.  (Navinbhai Dep. 44:13-19.)
21   On December 31, 2007, plaintiff and Aman were married in a "traditional Indian marriage
22   ceremony" in India, but were never legally married in either India or the United States.  (Tina
23

[2] The parties, as well as some implicated non-parties, share the last name of "Patel."  For
24   purposes of clarity, plaintiff Tina Patel is referred to as "plaintiff"; defendants Navinbhai Patel
     and Nayanabala Patel are referred to as "defendants"; and defendants' son, Aman Patel, is
25   referred to as "Aman."

26   [3] Defendants have filed numerous objections on hearsay and other grounds to evidence submitted
27   by plaintiff.  (ECF No. 37.)  However, because consideration of the objected-to evidence does not
     impact the court's resolution of the motion under the applicable summary judgment standards, the
28   court finds it unnecessary to rule on the objections.

Decl. ¶¶ 10-11; Aman Decl. ¶¶ 2-3.)  By defendants' wishes, and in accordance with cultural tradition, plaintiff and Aman lived with defendants in defendants' home during the time that plaintiff and Aman considered themselves married.  (Tina Decl. ¶ 30; Navinbhai Decl. ¶ 12; Nayanabala Decl. ¶ 12; Aman Decl. ¶ 5.)  Plaintiff and Aman treated each other as spouses, even filing joint tax returns (Tina Decl. ¶ 11; Aman Decl. ¶¶ 4, 6), and defendants treated plaintiff as their daughter-in-law.  (Navinbhai Decl. ¶ 11; Nayanabala Decl. ¶ 11.)  Plaintiff did not pay rent, and defendants primarily paid for the food and utilities of the household.  (Navinbhai Decl. ¶ 12; Nayanabala Decl. ¶ 12.)  Plaintiff was studying to become a nurse (Tina Decl. ¶ 12), and Aman had a full-time job.  (Deposition of Tina Patel, Ex. B to Declaration of Randal M. Barnum, ECF No. 26 ["Tina Dep."][4] 94:7-21; Deposition of Aman Patel, ECF No. 32-5 ["Aman Dep."] 19:5-22.)

Defendants own and operate the Solano Lodge, a motel and trailer park located in Fairfield, California ("Lodge").  (Tina Decl. ¶ 3; Navinbhai Decl. ¶¶ 2-3; Nayanabala Decl. ¶¶ 2-3.)  Defendants employed a housekeeper at the Lodge.  (Tina Decl. ¶ 8; Navinbhai Decl. ¶ 4; Nayanabala Decl. ¶ 4.)  Defendants also employed a manager from 2004 or 2005 through the end of 2009.  (Tina Decl. ¶ 17; Navinbhai Decl. ¶ 7; Navinbhai Dep. 36:7-24; Nayanabala Decl. ¶ 7.)

The manager's duties included:

> checking residents in and out, filling out registration cards, collecting payments from motel and trailer park residents, responding to communication from motel and trailer park residents at all hours, attending to maintenance issues, constantly monitoring the premises through video cameras and windows to spot and prevent unlawful activity (mainly drugs and prostitution), washing some of the laundry, and purchasing supplies.

(Tina Decl. ¶ 5; see also Navinbhai Dep. 41:11-18.)  "The Solano Lodge was open 24 hours a

---

[4] The cited document was submitted by defendants in support of their motion.  Plaintiff also submitted portions of her deposition transcript along with her opposition.  (See Deposition of Tina Patel, ECF No. 32-4.)  For convenience, the short citation "Tina Dep." incorporates both of those documents and refers to Tina Patel's deposition transcript as a whole.  Additionally, because the court at times cites to portions of that deposition transcript not filed in the record by the parties, but only submitted to chambers pursuant to Local Rule 133(j), the court directs the Clerk of Court to file the entire deposition transcript, which has not been designated as confidential, into the official record as a separate docket entry.

1    day, 7 days a week, 365 days per year, and the manager was available to actual and potential

2    motel and trailer park residents at all hours of [the] day (walk-in and phone) and night (night

3    window and phone)."  (Tina Decl. ¶ 4; see also Navinbhai Dep. 66:9-67:24.)  "The manager

4    performed the vast majority of this work from an apartment/office onsite," which had "an office,

5    living room, bedroom and kitchen."  (Tina Decl. ¶ 6; see also Navinbhai Dep. 16:4-22.)

6    Defendants paid the manager a monthly salary that ranged between $1,000 and $1,500.

7    (Navinbhai Dep. 62:3-17.)

8         According to plaintiff, around April 2009, defendants asked plaintiff to begin helping out

9    at the Lodge for around 10 hours per week, including "checking on the motel/trailer park

10   managers and helping with banking, supplies, billing, and room registrations, and periodically

11   monitoring the Solano Lodge for drug activity and prostitution."[5]  (Tina Decl. ¶¶ 14-15.)  Plaintiff

12   was "proficient and familiar with motel operations because [her] parents [had] owned and

13   operated motels ever since [she] was a child and [she had] helped them from time to time with

14   various business duties."  (Tina Decl. ¶ 2.)  However, plaintiff "had no interest in a career in the

15   motel business and felt that the work at the Solano Lodge was taking time away from [her] efforts

16   to become a nurse."  (Tina Decl. ¶ 16.)

17        At the end of 2009, the manager at the time ceased working at the Lodge.[6]  (Tina Decl. ¶

18   17.)  Defendants then travelled to India on vacation in January 2010, and remained there through

19   February 2010.  (Id.; Tina Dep. 60:2-6; Navinbhai Dep. 78:14-20.)  Defendants contend that

20   Aman "ran" the Lodge while defendants were in India (Navinbhai Dep. 75:3-5), although plaintiff

21   claims that defendants told her to "watch the motel."  (Tina Decl. ¶ 17; Tina Dep. 81:9-82:8.)

22   Because defendants had not hired a new manager and Aman worked full-time at a job away from

23   the Lodge, plaintiff claims that she managed the Lodge primarily on her own, except when Aman

24   was able to come and help her, remaining there "24 hours a day" for "between five and six days a

25   _____

26   [5] Defendants dispute ever having asked plaintiff to perform work at the Lodge.  Nevertheless, as
     noted above, the court resolves that factual dispute in plaintiff's favor for purposes of this motion.

27

28   [6] Although the parties appear to dispute whether the manager was terminated or left on his own
     accord, that factual dispute is not relevant to the instant motion.

4

week." (Tina Decl. ¶¶ 18-21.)  Plaintiff worked around 88 hours per week "performing the managerial duties," which included "remain[ing] vigilant and watch[ing] the motel/trailer park through windows and security cameras for unlawful activity."  (Id.)

Defendants returned from India in March 2010 and "took over the primary management of the Solano Lodge." (Tina Decl. ¶ 22; see also Navinbhai Dep. 78:14-20.)  According to plaintiff, from March 2010 through the middle of 2012, plaintiff and defendants "developed a custom" whereby defendants "would work the morning and night shifts," and plaintiff would "work the afternoon shift (from about 12:30 or 1 p.m. until 8 p.m. five or six days per week) which amounted to about 40 hours per week on average so that [defendants] could get some rest in the middle of the day." (Tina Decl. ¶ 23.)  Plaintiff was not instructed to start work at the Lodge at a specific time, but was generally expected to help defendants at the Lodge after completing her personal and household chores in the morning, and her schedule mostly proceeded according to the above-mentioned custom.  (See Tina Dep. 108:1-112:1.)  Plaintiff's claims that her duties at the Lodge also increased for extended periods of time in 2011 when defendant Navinbhai Patel underwent two knee surgeries that impaired his ability to work.  (Tina Decl. ¶ 25.)

Around the middle of 2012, defendants hired a new on-site manager.  (Tina Decl. ¶ 26; Navinbhai Decl. ¶ 9; Navinbhai Dep. 57:4-13; Nayanabala Decl. ¶ 9.)  Plaintiff's responsibilities were reduced to "helping to oversee the onsite managers (which meant about 7 hours of work per week)." (Tina Decl. ¶ 26.)  Plaintiff then stopped working at the Lodge in late December 2012, and in the early part of 2013, plaintiff and Aman ended their relationship.  (Tina Decl. ¶ 27; Aman Decl. ¶ 7.)

According to defendants, after plaintiff and Aman broke up in early 2013, defendants "were approached by Bobby Newman," who they believed to be the best friend of plaintiff's father, who claimed that defendants should pay plaintiff something because she had been married to their son for several years and had lived with him.  (Navinbhai Decl. ¶ 14; Nayanabala Decl. ¶ 14.)  Defendants claim that they rejected that request, pointing out that they had supported plaintiff during her relationship with Aman by permitting her to live in defendants' house and providing her with food.  (Id.)  At her deposition, plaintiff confirmed that Bobby Newman was

1    her father's best friend, but stated that, aside from this lawsuit commenced on December 5, 2013,

2    she had no knowledge regarding anyone, including Mr. Newman, asking for money from

3    defendants on her behalf.  (Tina Dep. 28:18-30:8.)

4         Plaintiff claims that, throughout the time that she worked at the Lodge, she considered

5    defendants to be her supervisors.  (Tina Dep. 93:14-19.)  Plaintiff did not consider Aman to be

6    her supervisor or a member of management at the Lodge.  (Tina Dep. 93:20-94:5.)  Plaintiff and

7    defendants never had any verbal or written agreement regarding an hourly pay rate or salary, or

8    even that defendants would pay plaintiff for her work.  (See Statement of Undisputed Material

9    Facts, ECF Nos. 25, 33, 38 ["SUF"] Nos. 4, 7; Tina Dep. 73:14-74:24.)  Plaintiff was never

10   placed on the payroll, and never received any pay during the several years that she worked at the

11   Lodge.  (SUF No. 5; Tina Dep. 59:21-23; Tina Decl. ¶¶ 3, 28.)  Plaintiff frequently complained to

12   Aman that she did not want to work at the Lodge, and discussed her desire to be paid with Aman

13   20 to 30 times, asking Aman to address these issues with defendants, his parents.  (SUF No. 8;

14   Tina Decl. ¶ 32; Tina Dep. 60:7-62:9.)  Aman said that he would speak with defendants on

15   plaintiff's behalf, but there is no evidence as to whether or not he ever did so.  (Tina Decl. ¶ 35;

16   Tina Dep. 62:10-63:14).

17        It is undisputed that plaintiff herself never asked for payment from, or otherwise discussed

18   payment with, defendants prior to initiating this action.  (SUF Nos. 2-3, 12; Tina Dep. 51:13-

19   53:9, 63:15-25, 66:10-14.)  Plaintiff explained that defendants were "a traditional Gujarati

20   family," and that "in traditional Indian culture criticizing an elder or bringing up a contentious

21   issue can be considered a sign of disrespect."  (Tina Decl. ¶¶ 30-31.)  As such, consistent with

22   traditional Indian social norms, plaintiff tried to have Aman as her husband address the issue with

23   his parents.  (Tina Decl. ¶¶ 31-33.)  Additionally, plaintiff found defendants "to be intimidating

24   and noticed that they would give [her] the cold shoulder if [she] did not follow their wishes."

25   (Tina Decl. ¶ 34.)  Plaintiff "was afraid that the issue of [her] hours at the Solano Lodge and non-

26   payment could irreversibly damage [her] relationship with [her] in-laws, make [her] living at their

27   house extremely difficult, and also damage [her] relationship with [her] husband."  (Id.)

28   Although plaintiff was unhappy about working at the Lodge for free and being diverted from a

1  nursing career, she "felt pressured to commence and continue working at the Solano Lodge to

2  maintain good family relations with [her] husband and [her] in-laws."  (Tina Decl. ¶¶ 24, 29.)

3        Defendants never provided plaintiff with a job description or job title at the Lodge.  (SUF

4  No. 16; Tina Dep. 112:6-21.)  Plaintiff did not keep a record of the days and hours that she

5  worked at the Lodge, and defendants did not provide plaintiff with time sheets or a punch clock to

6  record her arrival/departure, but plaintiff estimates that she performed over 5,000 hours of work

7  for defendants between 2009 and 2012.  (SUF No. 14; Tina Dep. 97:8-25; Tina Decl. ¶ 28.)

8  Plaintiff never submitted to defendants any records of the days and hours that she worked at the

9  Lodge.  (SUF No. 15; Tina Dep. 99:25-100:16.)  During the time that plaintiff worked at the

10  Lodge, she never calculated how much money she believed defendants owed her.  (SUF No. 6;

11  Tina Dep. 77:20-78:15.)

12        As noted above, plaintiff commenced this action against defendants in the Solano County

13  Superior Court on December 5, 2013, and it was subsequently removed by defendants to this

14  court on January 6, 2014.  (ECF No. 1.)  The operative complaint asserts the following 10 claims:

15  (1) failure to pay minimum wages under the California Labor Code; (2) failure to pay minimum

16  wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"); (3) failure to pay

17  regular time wages under the California Labor Code; (4) failure to pay overtime wages under the

18  California Labor Code; (5) failure to pay overtime wages under the FLSA; (6) failure to pay

19  wages due and waiting time penalties under the California Labor Code; (7) violation of California

20  Business and Professions Code section 17200; (8) inadequate pay statements under the California

21  Labor Code; (9) failure to keep adequate time records under the California Labor Code; and (10)

22  failure to provide meal periods and rest breaks under the California Labor Code.  (Id. at 6-18.)

23        The instant motion for summary judgment followed.

24  DISCUSSION

25        Legal Standard for Summary Judgment Motions

26        Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary

27  judgment, identifying each claim or defense--or the part of each claim or defense--on which

28  summary judgment is sought."  It further provides that "[t]he court shall grant summary judgment

1  if the movant shows that there is no genuine dispute as to any material fact and the movant is

2  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7]  A shifting burden of proof

3  governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund, Local 144

4  v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).  Under

5  summary judgment practice, the moving party:

6
7
8
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

10  56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

11  only prove that there is an absence of evidence to support the non-moving party's case."  In re

12  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

13  Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

14  not have the trial burden of production may rely on a showing that a party who does have the trial

15  burden cannot produce admissible evidence to carry its burden as to the fact").

16      If the moving party meets its initial responsibility, the opposing party must establish that a

17  genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

18  Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the opposing party

19  must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

20  outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S.

21  242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

22  1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party,'"  FreecycleSunnyvale v. Freecycle Network, 626 F.3d

24  509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A party opposing summary

25  judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing

26

27
28
---
[7] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1    to particular parts of materials in the record, including depositions, documents, electronically

2    stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers,

3    or other materials; or (B) showing that the materials cited do not establish the absence or presence

4    of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

5    fact."[8]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However, the opposing party "must show more than the

6    mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing

7    Anderson, 477 U.S. at 252).

8         Generally, in resolving a motion for summary judgment, the evidence of the opposing

9    party is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that

10   may be drawn from the facts placed before the court must be viewed in a light most favorable to

11   the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth.,

12   653 F.3d 963, 966 (9th Cir. 2011).  However, a "non-movant's bald assertions or a mere scintilla

13   of evidence in his favor are both insufficient to withstand summary judgment."  Fed. Trade

14   Comm'n v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009).  To demonstrate a genuine factual

15   dispute, the opposing party "must do more than simply show that there is some metaphysical

16   doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of

17   fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S.

18   at 586-87 (citation omitted).

19        Federal Claims under the Fair Labor Standards Act

20        Plaintiff asserts claims for failure to pay minimum wages and overtime wages in violation

21   of the federal FLSA.  (Compl. ¶¶ 13-20, 32-37.)

22        The FLSA provides that "[e]very employer shall pay to each of his employees who in any

23   workweek is engaged in commerce or in the production of goods for commerce, or is employed in

24   an enterprise engaged in commerce or in the production of goods for commerce, wages" at the

25   rate of $ 7.25 an hour.  29 U.S.C. § 206(a)(1)(C).  In addition:

26   ////

27

28   [8]  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

1
2
3
4
5

> no employer shall employ any of his employees who in any
> workweek is engaged in commerce or in the production of goods
> for commerce, or is employed in an enterprise engaged in
> commerce or in the production of goods for commerce, for a
> workweek longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above
> specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

6   29 U.S.C. § 207(a)(1).

7         Defendants contend that they are entitled to summary judgment on plaintiff's claims under

8   the FLSA, because the undisputed facts demonstrate that plaintiff was not defendants' employee

9   for purposes of the FLSA.  For the reasons discussed below, that argument has merit.

10        Under the FLSA, an "employee" is defined as "any individual employed by an employer."

11  29 U.S.C. § 203(e)(1).  The term "employ" "includes to suffer or permit to work."  29 U.S.C. §

12  203(g).  The United States Supreme Court has broadly interpreted the FLSA to apply to "many

13  persons and working relationships which, prior to this Act, were not deemed to fall within an

14  employer-employee category."  Walling v. Portland Terminal Co., 330 U.S. 148, 150-51 (1947).

15  However, the United States Supreme Court also observed that "[w]hile the statutory definition [of

16  employee] is exceedingly broad…it does have its limits.  An individual who, 'without promise or

17  expectation of compensation, but solely for his personal purpose or pleasure, worked in activities

18  carried on by other persons either for their pleasure or profit,' is outside the sweep of the Act."

19  Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 (1985) ("Alamo") (quoting

20  Walling, 330 U.S. at 152).  The FLSA was "'obviously not intended to stamp all persons as

21  employees who, without any express or implied compensation agreement, might work for their

22  own advantage on the premises of another.'"  Id. at 300 (quoting Walling, 330 U.S. at 153).

23        In this case, even when all material factual disputes are resolved in plaintiff's favor, the

24  facts demonstrate that plaintiff was not an employee for purposes of the FLSA.  Plaintiff and

25  defendants never had any verbal or written agreement that defendants would pay plaintiff for her

26  work at the Lodge, let alone an agreement regarding an hourly pay rate or salary.  Plaintiff was

27  not provided with a job description or job title, was never placed on the payroll, and never

28  received any pay during the several years that she worked at the Lodge.  Although plaintiff was

10

generally expected to help out at the Lodge according to her in-laws' needs,[9] and her work there at times assumed a somewhat customary schedule, plaintiff was not instructed to start work at a specific time, and defendants did not provide plaintiff with time sheets or a punch clock to record her arrival/departure.  Indeed, plaintiff herself did not keep a record of the days and hours that she worked at the Lodge, she never submitted documentation of the days and hours that she worked at the Lodge to defendants, and she never calculated how much money she believed defendants owed her during the time that she worked at the Lodge.  Importantly, plaintiff never even requested payment from, nor discussed payment with, defendants prior to initiating this action.  Instead, plaintiff admits that, although very dissatisfied with the circumstances, she began and continued working at the Lodge to avoid familial conflict and maintain good relations with her husband and very traditional Gujarati in-laws, with whom she lived in a single household and for whom she also performed household chores unrelated to the Lodge.

In light of these facts, there can be no genuine dispute that plaintiff was an "individual who, without promise or expectation of compensation, but solely for [her] personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit," and thus not an employee for purposes of the FLSA.  Alamo, 471 U.S. at 295.

While apparently conceding that there was no promise of compensation, plaintiff nonetheless asserts that she expected to be compensated.  However, bald and conclusory assertions are insufficient to withstand summary judgment.  Stefanchik, 559 F.3d at 929.  No rational trier of fact could find that plaintiff expected to be compensated *despite working for several years without being paid and having not a single discussion with defendants regarding payment.*  Plaintiff highlights that she discussed her wanting to be paid for work at the Lodge with Aman at least 20-30 times, asking Aman to address the issue with his parents.  However, that evidence only demonstrates that plaintiff was dissatisfied with the situation and had a *desire* to be paid – not that she had worked with an *expectation* of payment.  It may be that plaintiff, in light

---

[9] Even though plaintiff and Aman were not legally married in India or the United States, the parties do not dispute that they regarded each other as family during the time that plaintiff worked at the Lodge, i.e., that defendants were plaintiff's *de facto* in-laws and that plaintiff was their *de facto* daughter-in-law.

of cultural norms, felt uncomfortable, or even unable, to discuss her desire to be paid with defendants, but that does not change the fact that no such discussion took place, and that plaintiff presented no evidence of any real basis to expect payment from her in-laws.  At best, plaintiff's discussions with Aman do not rise above a mere scintilla of evidence insufficient to defeat summary judgment.[10]

Additionally, plaintiff emphasizes that she had no interest in a career in the motel business and felt that the work at the Lodge was taking time away from her efforts to become a nurse.  To be sure, viewing the evidence in the light most favorable to plaintiff, it seems clear that plaintiff was not working at the Lodge for pleasure or to advance her career goals.  Nevertheless, as discussed above, the undisputed facts show that plaintiff was working at the Lodge solely for the personal purpose of avoiding family conflict and maintaining good relations with Aman and plaintiff's former in-laws.  (See Tina Decl. ¶ 24 ["The Patels were a traditional Gujarati family and I felt pressured to commence and continue working at the Solano Lodge to maintain good family relations with my husband and my in-laws."].)[11]  Simply put, plaintiff cannot now claim

_____

[10] Plaintiff further argues that, because defendants placed Aman in charge of the Lodge when they were in India, Aman was defendants' agent and defendants considered him to be a part of the Lodge's management.  As such, even if Aman never actually discussed plaintiff's wanting to be paid with defendants, plaintiff effectively discussed her desire to be paid with defendants via their agent.  That argument lacks merit.  As an initial matter, although defendant Navinbhai Patel testified that Aman was instructed to "take care" of the Lodge, and that Aman "ran" the Lodge, while defendants were in India (Navinbhai Dep. 75:3-76:3), there is no evidence that Aman was given the authority to hire and fire employees.  Indeed, plaintiff never considered Aman to be her supervisor or a part of management (Tina Dep. 93:20-94:5), and her repeated requests for Aman to discuss plaintiff's desire to be paid with defendants show that plaintiff herself believed that defendants, and not Aman, were the only persons with the power to make payment decisions.  Moreover, even if Aman were somehow deemed to be defendants' agent, there is no evidence that Aman made any promise of pay or other compensation to plaintiff that could form the basis for an expectation of payment.  Instead, as plaintiff puts it, "nothing happened" (Tina Decl. ¶ 35), and she nevertheless continued to work at the Lodge for several years.

[11] Without deciding the matter, defendants arguably may have treated plaintiff unfairly and placed her in a difficult position by pressuring her to choose between her own life priorities and good relations with her husband and in-laws.  However, it is not this court's function to pass judgment on culture or family relations.  Regardless of plaintiff's dissatisfaction with the circumstances, the undisputed facts show that plaintiff worked at the Lodge for a personal purpose – to preserve her family relationship with Aman and defendants.

1    employee status under the FLSA just because those former relations have broken down, thereby

2    defeating her acknowledged personal purpose for having worked at the Lodge.

3         Plaintiff further relies on a printout from the Fair Labor Standards Act Advisor tool on the

4    United States Department of Labor's website discussing "Volunteers," stating, *inter alia*, that

5    "employees may not volunteer services to for-profit private sector employers."  (ECF No. 32-7 at

6    2.)  However, such reliance is misplaced, because the quoted statement does not stand for the

7    proposition that no individual could ever volunteer for a for-profit business.  Instead, the

8    statement indicates that "*employees* may not volunteer services to for-profit private sector

9    *employers*."  (Id. (emphasis added).)  The statement presumes an existing employment

10   relationship, and thus indicates that a *current employee* cannot volunteer his or her services to the

11   for-profit *employer*.  That rule is to prevent for-profit employers from using their superior

12   bargaining power to coerce employees into volunteering their time instead of receiving overtime

13   pay and other protections.  See Alamo, 471 U.S. at 302 ("If an exception to the Act were carved

14   out for employees willing to testify that they performed work 'voluntarily,' employers might be

15   able to use superior bargaining power to coerce employees to make such assertions, or to waive

16   their protections under the Act.").  The quoted statement does not inform the analysis of whether

17   plaintiff here is an employee under the FLSA in the first instance.  Moreover, the website printout

18   is not binding authority, and as interpreted by plaintiff, would actually conflict with United States

19   Supreme Court precedent, which made clear that "[a]n individual who, without promise or

20   expectation of compensation, but solely for his personal purpose or pleasure, worked in activities

21   carried on by other persons either for their pleasure *or profit*, is outside the sweep of the Act."

22   Alamo, 471 U.S. at 295.  Thus, the fact that plaintiff worked in a for-profit business does not

23   mean that plaintiff must have been an employee for purposes of the FLSA.[12]

24   _____

25   [12] Plaintiff makes much of the Supreme Court's remark in Walling that the railroad defendant in
     that case received no immediate advantage from the work done by trainee brakemen, who were
26   held not to be employees for purposes of the FLSA, because they required supervision by regular
     employees and at times actually retarded the railroad's work.  Walling, 330 U.S. at 149-50, 153.
27   However, read in context, the court was merely emphasizing that the trainees in that case were
     truly working for the personal purpose of training to become brakemen, as opposed to a sham
28   arrangement whereby the railroad defendant was actually paying them substandard wages for

13

1    Plaintiff's arguments based on the definition of "volunteer" outlined in 29 C.F.R. §

2    553.101 as someone who performs work for civic, charitable, or humanitarian purposes also lack

3    merit, because that regulation only defines and addresses volunteers in the context of public

4    agencies.  As such, the regulation is inapposite to this case.

5    Finally, plaintiff's argument that she is an employee under the "economic reality" test

6    discussed in Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), is

7    unpersuasive.  The primary issue in Bonnette was whether the defendant public welfare agencies

8    were joint employers of the plaintiff chore workers providing certain services to disabled public

9    assistance recipients.  In Bonnette, the court explained that "whether an employer-employee

10   relationship exists does not depend on isolated factors but rather upon the circumstances of the

11   whole activity."  Id. at 1469.  "The touchstone is economic reality."  Id.  The court then listed

12   four factors to be considered in determining whether the welfare agencies were employers of the

13   chore workers under a joint employment theory: "whether the alleged employer (1) had the power

14   to hire and fire the employees, (2) supervised and controlled employee work schedules or

15   conditions of employment, (3) determined the rate and method of payment, and (4) maintained

16   employment records."  Id. at 1470.  However, those factors are simply not relevant to this case,

17   where the issue is not whether plaintiff was jointly employed, or whether she was an employee or

18   independent contractor.  If anything, the circumstances of the whole activity and the economic

19   reality here compel the conclusion that plaintiff was not defendants' employee.

20   In sum, the undisputed facts show that there was no express or implied compensation

21   agreement, and that plaintiff was an "individual who, without promise or expectation of

22   compensation, but solely for [her] personal purpose or pleasure, worked in activities carried on by

23   other persons either for their pleasure or profit," and thus not an employee for purposes of the

24   FLSA.  Alamo, 471 U.S. at 295.  Therefore, the court grants the motion for summary judgment as

25   work that immediately benefited the railroad, without obtaining the proper permits.  Id. at 152-53.
     In the instant case, for the reasons discussed above, there can be no genuine dispute that plaintiff
26   was working in the family business for the personal purpose of maintaining her relationships with
     her former husband and in-laws, and without the promise or expectation of compensation.  The
27   mere fact that the family business was a for-profit business does not transmute plaintiff into an
     employee under the FLSA.  Alamo, 471 U.S. at 295.
28

1   to plaintiff's FLSA claims.

2              Remaining State Law Claims

3         As noted above, plaintiff's complaint also asserts various state law claims.  However, as

4   there are no federal claims remaining, the court declines to exercise supplemental jurisdiction

5   over such state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to

6   exercise supplemental jurisdiction over a claim...if – the district court has dismissed all claims

7   over which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d 999,

8   1000-01 (9th Cir. 1997) ("'in the usual case in which all federal-law claims are eliminated before

9   trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

10  remaining state-law claims'"), quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350

11  n.7 (1988).  Here, given that the federal claims have dropped out in the context of a motion for

12  summary judgment at a time well before trial, and that there is no complete diversity of

13  citizenship with all parties being citizens of California, the court finds it appropriate to remand to

14  state court the remaining claims arising under California law.

15  CONCLUSION

16        Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

17     1.  Defendants' motion for summary judgment (ECF No. 24) is GRANTED IN PART as

18         to plaintiff's federal FLSA claims.

19     2.  The remaining state law claims are REMANDED to the Solano County Superior

20         Court.

21     3.  The Clerk of Court shall serve a certified copy of this order on the Clerk of the Solano

22         County Superior Court, and reference the state case number (FCS042725) in the proof

23         of service.

24     4.  The Clerk of Court shall file the entire transcript from the deposition of Tina Patel in

25         the official record as a separate docket entry.

26  ////

27  ////

28  ////

5.   The Clerk of Court shall vacate all scheduled dates and close this case.

IT IS SO ORDERED.

Dated:  November 17, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

16